STATE v. E. G. NEWCOMB.

(Decided May 22, 1900.)

*Indictment, Retailing Without License—Greensboro Dispensary, Act 1890, Chapter 254—Garsed v. Greensboro, Ante—Motion in Arrest of Judgment.*

Where the act creating the Greensboro Dispensary Board, ratified February 24, 1899, required the Board to establish a dispensary in said city for the sale of spirituous, vinous and malt liquors, on the 1st day of July, 1899, or *as soon thereafter as possible,* and provided, *there shall be no prosecution under this act for the sale of liquor until said dispensary shall be open*—and the defendant was convicted of violating said act by unlawfully retailing spirituous liquor on November 7, 1899, the judgment will not be arrested because the indictment did not aver that the sale took place *after* the dispensary was opened; if it took place *before,* that is matter of defense.

INDICTMENT for unlawfully retailing spirituous liquor in Greensboro, N. C., tried before *Brown, J.,* at December Term, 1899, of GUILFORD Superior Court

The indictment is as follows:

"State of North Carolina—Guilford County.
"Superior Court, December Term, 1899.
"The jurors for the State upon their oath present: That E. G. Newcomb, late of the county of Guilford, on the 7th day of November, in the year of our Lord, 1899, at and in the county aforesaid, and in the city of Greensboro, unlawfully and wilfully did sell and retail to James D. Taylor, spirituous liquor, the said E. G. Newcomb, not then and there being manager for or agent or servant of the dispensary board for the city of Greensboro, empowered to sell as pro-

vided by the Acts of 1899, chapter 254, of the Public Laws, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.

"BROOKS, *Solicitor.*"

The defendant was convicted, and from the judgment rendered appealed to the Supreme Court, where he moved in arrest of judgment on the ground that the indictment does not aver that the dispensary was in operation upon November 7, 1899, when the offense charged was committed.    The motion was overruled.

- CLARK, J., writes the opinion of the Court.
DOUGLAS, J., writes dissenting opinion.

*Messrs. Bynum & Bynum,* and *J. N. Staples,* for appellant. *Mr. Brown Shepherd,* with *Attorney-General,* for State.

CLARK, J.    This is an indictment for selling liquor in Greensboro contrary to the provisions of the act creating a "dispensary" in that town.    Acts 1899, chap. 254.    The defendant frankly and properly abandoned here the exceptions upon which the appeal has come up, conceding that they had been settled by the decision in *Garsed v. Greensboro,* at this term, which sustained the constitutionality of the act.

The sole point now raised is a motion in arrest of judgment, made for the first time in this Court (probably an afterthought), on the ground that the indictment does not aver that the dispensary was in operation upon November 7, 1899, when the offense charged was committed.

The act was ratified on February 24, 1899.    Section 1 thereof makes the sale of spirituous liquor, otherwise than is therein provided, a misdemeanor; and sec. 3 provides that the dispensary board shall establish the dispensary "on the

70——126

first of July, 1899, or as soon thereafter as possible," and that "there shall be no prosecution under the provisions of this act for the sale of liquor until said dispensary is open." The clear presumption is, nothing else appearing, that the law went into force on July 1, 1899, and if it did not, the fact which would withdraw the defendant from liability is a matter of defense which he might have set up, if the evidence and his admission had not been the other way. The rule of pleading in criminal actions has been long settled by uniform decisions, that where the matter which would withdraw a case from the operation of a statute creating a criminal offense (here sec. 1) is in another section of the statute (here sec. 3), or indeed, when in the same section if it is in a proviso, then such matter is not required to be negatived by the indictment, but must be set up on the trial as a matter of defense. *State v. Downs,* 116 N. C., 1064, citing *State v. George,* 93 N. C., 567; *State v. Lanier,* 88 N. C., 658; *State v. Heaton,* 81 N. C., 542; *State v. Tomlinson,* 77 N. C., 528; *State v. Norman,* 13 N. C., 222.

In the last-named case, HENDERSON, C. J., draws a clear distinction between a proviso which withdraws a case from the operation of a statute, which is a matter of defense and need not be negatived in the indictment, and a condition upon the existence of which the statute depends, which must be averred. It has since been approved, among other instances, in *State v. Davis,* 109 N. C., 780, and *State v. Melton,* 120 N. C., 591.

The indictment charges that the defendant "on the 7th of November, 1899, at and in the county of Guilford, and in the city of Greensboro, unlawfully and wilfully did sell and retail to James B. Taylor spirituous liquor, the said E. G. Newcomb not then and there being manager for, or agent or servant of, the dispensary board for the city of Greensboro,

empowered to sell as provided by the Act of 1899, chap. 254, of the Public Laws, contrary to the statute in such case made and provided."

The motion in arrest admits the truth of these allegations, and indeed, it is determined by the verdict; and as the defendant seeks by this motion to withdraw himself from liability to the statute, contrary to whose provisions it is both admitted and found that he made the sale, it was incumbent upon him to prove such fact in his defense.    *State v. Ballard,* 6 N. C., 186.

This is not like *State v. Chambers,* 93 N. C., 600, chiefly relied on by the defendant.    That was not a case where the act was to go into effect on a day named, subject to be suspended if something was not done, which is this case, but the act was not to go into effect at all until upon a vote of the people it was affirmed and made a law.    Of course, in the latter case, it must be both averred and proved that the vote, which was essential to the validity of the act, was in favor of making it a valid statute.    Here, the act is positive, and goes into effect on the date therein specified, with a provision withdrawing the selling of liquor from prosecution thereunder "until said dispensary is open"—thus making the defeasance a matter of defense, for unless the defeasance is shown the statute is in force from July 1.    It is no more necessary to aver in the indictment that the sale was after the opening of the dispensary than it would be to aver that any other act, made criminal by statute, took place after the statute was passed.    *State v. Fleming,* 107 N. C., 905.    If the occurrence was before the time at which such act became criminal, that is a matter of defense arising upon the evidence.    *State v. Ballard, supra.*    If it were necessary to put in an indictment, now, a negative averment that this sale was not before the dispensary opened, the same averment would

be necessary in every indictment under the statute for all the years to come as long as it is in force. *State v. Fleming, supra*.

The other cases cited by the defendant are all cases in which the exception is named in the same clause which created the offense, and it is not negatived in the indictment, and therefore upon its face the offense described in the act is not charged. Indeed, this was also the case in *State v. Weaver, supra*, where it is said, "The indictment does not sufficiently charge an offense under the statute," which "provides that in a contingency specified in it, depending upon a popular vote to be taken as therein directed, it shall be unlawful to sell spirituous liquors, etc.;" hence in the face of the indictment, it not appearing that the contingency *dehors* upon which the statute was to have validity had occurred, proof of sale did not prove its illegality. Here, the statute being valid, any fact *dehors* which would withdraw the defendant from its operation, is a matter of defense.

The sale is alleged on November 7, 1899, and the motion in arrest of judgment admits the fact—which, besides, was not controverted on the trial. There can be, in fact, no injustice done the defendant, for there is an express admission in the record by him that the dispensary was opened in the city of Greensboro under said Act on July 1, 1899, and has been in operation ever since.

If the judgment could, under the settled rules of criminal procedure, be arrested, it would therefore be a vain thing, and of no benefit to the defendant. Though this consideration should not avail to defeat the defendant of any legal right, if such he had, to have the judgment arrested, still, it shows the wisdom of the rule that such matters are defenses to be set up and proved by the defendant who seeks to withdraw

himself from the operation of a statute creating a criminal offense.

Affirmed.

DOUGLAS, J., dissenting.   I can not concur in the judgment of the Court.   Whatever may be my personal views as to the benefits of the dispensary system, I can not ignore the right of one charged with crime to be tried according to the law of the land.   To my mind an indictment must directly charge a criminal offense.   The jury can not find the defendant guilty of more than is charged in the indictment, and if the facts therein stated are not of themselves sufficient to show the guilt of the defendant if they are found to be true, then no judgment can be pronounced upon the verdict.   If every allegation in the bill is consistent with the innocence of the defendant, a verdict that he is "guilty in the manner and form as charged in the bill of indictment" has no legal effect. Guilty of what?   Of what the indictment charges, but not of what the law condemns.   The penalty is prescribed for violating the law, and where there is no violation of the law no penalty can be imposed.

In the case at bar every word in the indictment may be true, and yet the defendant may not be guilty of any criminal act, because it is not charged that the dispensary had been opened, an essential requisite to any conviction under the act.   The essential parts of sec. 3, of the Act, are as follows: "The said dispensary board on the first day of July, 1899, or *as soon thereafter as possible,* shall establish one dispensary in said city, to be located on one of the principal streets, for the sale of spirituous, vinous and malt liquors, *and there shall be no prosecution under this act for the sale of liquor until said dispensary shall be open."*   The latter part is not an exception or even a proviso, but is a part of the very

sentence itself which establishes the dispensary. There is not even a semicolon between them, only a comma. It does not profess to "withdraw" any individual or class "from the operation of the statute," but withdraws the statute itself from operation as to any criminal effect until the condition is complied with. It is in the nature of a *condition prece-dent* which must be strictly complied with before the statute can have any penal effect whatsoever. So far from there being a "clear presumption" that the law went into force on July 1,1899 (by which I suppose is meant the criminal opera-tion of the law), this presumption is rebutted by the statute itself, which specifically provides (1) for its failure to do so, and (2) that it shall not do so until after the happening of a certain event. This event might never have happened. Indeed, the author of the bill evidently anticipated some trouble, as he provided in one place that the city of Greens-boro should appropriate $2,000 or as much thereof as might be necessary to establish the dispensary; and then imme-diately provided that the dispensary board might establish said dispensary without receiving said appropriation. His foresight was justified by subsequent event, as the city has been enjoined from appropriating the money. *Garsed v. Greensboro,* at this term. All these anticipations, precau-tions and provisos, arising on the face of the act, tend strongly to show that there is no legal presumption that the dispensary was opened on July 1, 1899. The very reason-ing of the opinion, with the authorities cited therein, pre-vents me from concurring in its conclusion.

The opinion of the Court says: "In the last-named case (*State v. Norman,* 13 N. C., 222), HENDERSON, C. J., draws a clear distinction between a proviso which withdraws a case from the operation of a statute, which is a matter of defense, and need not be negatived in the indictment, and *a condition*

*upon the existence of which the statute depends, which must be averred."* To my mind the case at bar comes clearly within the second class, as its existence as a criminal statute absolutely depends upon the establishment of the dispensary.

Again it is said this case is not like *State v. Chambers.* I think it is. In that case the act making it a misdemeanor to sell liquor in the town of Morganton was not to go into effect until after ratification by a vote of the people. In the case at bar, an act making it a misdemeanor to sell liquor in the city of Greensboro is not to go into effect until after the opening of the dispensary. In Chambers' case, this Court said it could not take judicial notice that an election had been held, and of the result thereof. Neither can we take judicial notice that a dispensary has been established in Greensboro. In Chambers' case, this Court held that the indictment was fatally defective because it did not allege "that the contingency happened upon which it became unlawful and indictable to sell spirituous liquors within the area of the territory specified." Why is not the indictment in the case at bar fatally defective inasmuch as it failed to allege that the contingency had happened—the opening of the dispensary—upon which alone the statute in question could have any criminal operation? I fail to see. Whoever the prisoner may be, or whatever he may have done, he is presumed to be innocent until lawfully convicted, and is entitled to a fair and impartial trial according to "the law of the land."

I am in favor of a prompt and faithful enforcement of the law, without useless delay or needless technicality, but I am not in favor of breaking down, by judicial construction, all the barriers which the wisdom of the common law has erected around the liberty of the citizen.